(14)
7/6/00

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDI ARMANDO GONZALEZ-DE LEON,
petitioner

V

JANET RENO, ET AL.,
Respondents

CIVIL NO. 1:00-00702

(Judge Caldwell)

FILED
HARRISBURG

MARY E. D'ANDREA
Per _____ Deputy Clerk

## Additional Evidence

Comes now, petitioner Fredi Armando Gonzalez, pro se and hereby submitts to this honorable Court the latest decision of the Immigration Judge in support of the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Along with written memorandum of Bond Decision.

Respectfully:

[signature]

Date. 7-1-200

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
YORK, PENNSYLVANIA

#491

NNF - 2A

In the Matter of

Fredi Armando GONZALEZ-De LEON
      Respondent

In Bond Proceedings
File No. A70-944-868

**WRITTEN MEMORANDUM OF BOND DECISION**

BACKGROUND

  On January 6, 2000 the Board of Immigration Appeals reversed the court's decision of July 28, 1999 terminating the underlying removal proceeding in this case, holding that respondent had been convicted of an aggravated felony, and remanded the case to the immigration court for further proceedings, including a possible waiver under INA §212(h), citing Matter of Michel, 21 I&N Dec. 1101 (BIA 1998), since respondent is a political asylee but not a lawful permanent resident. He came to the United States from Guatemala in 1993 and was granted political asylum by the INS in 1995. He is now 28 years old.

  Upon remand, the court granted adjustment of status under INA §209(a) on May 3, 2000. The court held that a waiver -- either under INA §209(c) or INA §212(h) -- was not ultimately necessary. First, waiver for an aggravated felony is not necessary for adjustment under INA §209(a) since only grounds of inadmissibility need to be waived, not grounds of deportability. 8 CFR 209.2(b). An aggravated felony is a ground of deportability only (under INA §237(a)(2)(A)(iii)), but is not a ground of inadmissibility under INA §212(a). Second, the court held that respondent's conviction is for a simple assault without aggravating factors and is not a crime involving moral turpitude, so that a waiver of inadmissibility under either INA §209(c) or INA §212(h) is not necessary. Under 8 CFR 209.2(a) the respondent can adjust his status on the simple ground of being a resident of the U.S. for more than a year, who continues to be a refugee as defined under INA §101(a)(42) (the same definition used for political asylees, INA §208(b)(1)), and who is admissible. While discretion can be applied to deny a person who otherwise qualifies, that is a matter that must take into consideration all circumstances, including the fact that the respondent is not inadmissible on criminal grounds.

  In the alternative, even if respondent's conviction were to be for a crime involving moral turpitude, such ground of inadmissibility can be waived "for humanitarian purposes, to assure

family unity, or when it is otherwise in the public interest." 8 CFR 209.2(b), INA §209(c). This is a different waiver, with a different legal standard, from the waiver authorized in INA §212(h), because it does not require a showing of extreme hardship to respondent's U.S. citizen child as the §212(h) waiver does. The court would grant the waiver for humanitarian purposes and to assure family unity, if it were necessary.

If legally necessary, the court would also grant a waiver under INA §212(h)(1)(B) on the facts in this case because of the extreme hardship to respondent's infant U.S. citizen child, who would grow up in the U.S. without a loving father.

The Immigration Court has authority to hear the adjustment case de novo. 8 CFR 209.2(f). See also Matter of H–N–, Int. Dec. #3414 (BIA 1999) (the immigration court has authority to adjust status of a refugee).

The INS reserved its right to appeal the court's decision granting adjustment.

JURISDICTION TO SET A BOND

This written memorandum memorializes a bond decision made the same day as the merits decision granting adjustment. Respondent's status has been adjusted to lawful permanent resident, and the Attorney General's discretion has been exercised in his favor to make him a permanent resident notwithstanding his ground of deportability. He is therefore no longer "deportable by reason of an offense covered in section . . . 237(a)(2)(A)(iii)," INA §236(c)(1)(B), nor, if his single crime should be viewed as one involving moral turpitude, "deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien was sentenced to a term of imprisonment of at least 1 year," INA §236(c)(1)(C). Therefore, neither of those sections prohibits him from being granted a bond. The INS reasonably argues that since it has reserved its right to appeal, the court's decision is not final. That is true. But it is also the court's decision that respondent is no longer deportable. If the INS should not appeal, or if the BIA should affirm the court's adjustment of respondent's status, then the court's decision will be the final decision in this case. This court has no control over either of those two outcomes. As far is this court is concerned, respondent is no longer removable and is eligible for a bond on that basis. Obviously, if the underlying merits decision is not final, then, given the Attorney General's grant to the INS of the power to stay the immigration court's bond decisions, 8 CFR 3.19(i), the INS may exercise its discretion to stay this decision. But it need not do so, and would not be prejudiced in any way if it does not, provided the bond decision (releasing respondent on his recognizance) is well-founded in the facts (i.e. he is not a flight risk or a danger to the community).

In Matter of Joseph (II), Int. Dec. #3398 (BIA 1999), the Board held that the regulations "allow for an independent assessment by an Immigration Judge and the Board, in the preliminary bond context, of whether the alien is 'properly included' in a category subject to mandatory detention." Slip op. at 8-9, citing 8 CFR3.19(h)(2)(ii). In Joseph II, that assessment involved the question of whether the respondent's conviction made him deportable at all. In the present

2

case the jurisdictional issue is different: it is law on the case that the respondent's conviction is an aggravated felony and makes him deportable. But the court has exercised the Attorney General's discretion to make him no longer "deportable" for those convictions. In such circumstances, is he "properly included" within the scope of INA §236(c)(1)? While it is true that the court's decision is not final because the INS intends to appeal it, as far as this forum is concerned the respondent is no longer "deportable." It would be inconsistent to rule in the removal hearing that he is no longer deportable, but to rule the contrary in a bond hearing after the removal hearing is completed. "Given the regulatory scheme, we find no basis to the Service's contention that the Immigration Judge should not be able to use his ruling on the underlying merits of the removal proceedings as the basis for his finding of jurisdiction over the respondent's bond claim." Joseph II at 6. "[U]nder the Service's approach, an alien such as the respondent would have no recourse to that ordinary bond provision [i.e. a merits decision under INA §236(a)], even in cases where the Service is wrong in its charge and will lose on appeal. . . . [T]he regulation must have meaning beyond simply allowing for a perfunctory review of the basis for the Service's charge. Indeed, the regulatory history indicates that this rule was intended to provide 'for an individualized hearing on whether an alien in custody actually falls within a category of aliens subject to mandatory detention.'" Id. at 9 (emphasis supplied by BIA; citation omitted).

RESPONDENT'S CONVICTION IS NOT FOR A CRIME INVOLVING MORAL TURPITUDE; THEREFORE, HE IS PROPERLY GRANTED ADJUSTMENT UNDER 8 C.F.R. 209.2(b) WITHOUT AN EXPLICIT WAIVER

The Board has noted the general attributes of a crime involving moral turpitude in Matter of Franklin, 20 I&N Dec. 867, 868 (BIA 1996) as follows:

> Moral turpitude refers to conduct which is inherently base, vile or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders the crime one of moral turpitude.

(Citations omitted.) The Board has also noted that "[t]he essence of moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind." Matter of Tran, 21 I&N Dec. 291, 293 (BIA 1996).

In the context of this particular case it is also important to remember that the apparent seriousness of the crime (respondent was convicted of Assault on a Foreign Official under 18 USC §112(a) in a federal court) does not make the crime turpitudinous. Id. Also, while respondent was sentenced to 24 months in prison, "the severity of the sentence imposed does not

3

necessarily reflect whether his offense involves turpitude." Matter of Serna, 20 I&N Dec. 579, 582 (BIA 1992). The statute he violated reads in relevant part:

> Whoever assaults, strikes, wounds, imprisons, or offers violence to a foreign official . . . shall be fined under this title or imprisoned not more than three years, or both. . . . Whoever in the commission of any such act uses a deadly or dangerous weapon, or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

18 USC §112(a).[1] The indictment, as quoted in the pre-sentence report, says respondent "assaulted and offered violence to a foreign official, resulting in the infliction of bodily injury." Intent to injure is not a necessary element of this crime. "Neither the plain language of §112(a) nor judicial construction of similar assault statutes requires proof of injury or intent to injure. Section 112(a) does not refer to injury or intent to injure." U.S. v. Gan, 636 F2d 28 (2d Cir. 1980), cert. den'd, 451 US 1020 (1981). While no cases interpret the intent requirement of "strik[ing]" or "wound[ing]" under this statute, it is appropriate to look at interpretations of "similar assault statutes," id., including (as in Gan) 18 USC §113. It has been held that "[a]ssault by striking, beating or wounding" under 18 USC §13(a)(4) (formerly §113(d)) is equivalent of simple battery and "requires neither a particular degree of severity in the injury nor that type of specific intent which characterizes the more serious offenses under section 113." U. S. v. Knife, 592 F.2d 472, 482 (8th Cir. 1979), quoting US v. Stewart, 568 F.2d 501, 504-05 (6th Cir. 1978).[2]

In Matter of Fualaau, 21 I&N Dec. 475, 477-78 (BIA 1996), the Board observed:

> The crime of assault includes a broad spectrum of misconduct, ranging from relatively minor offenses, e.g. simple assault, to serious offenses, e.g. assault with a deadly weapon. We have held that assault may or may not involve moral turpitude. Simple assault is not considered to be a crime involving moral turpitude.

---

[1] When the Board quoted this statute in its decision of January 6, 2000, it omitted the word "assault."

[2] This may be significant if the Board reviews this case, because this authority contradicts the Board's January 6, 2000 decision which held, "While the means by which an individual might violate this statute are varied, all require specific intent." Decision at 2. It cited Gan, supra, without reference to a page number. The most that can be found in Gan to support the Board's assertion is that the indictment in that case specifically alleged that the defendant had intentionally struck a protected official, and had conceded doing so, and the Eighth Circuit held, "Such conduct amounts to an assault, striking or offer of violence within the meaning of §112(a)" regardless of lack of any additional intent to injure. Id. at 30. It does not say that the various acts prohibited in §112 require specific intent, the point for which the Board cites it.

> However, assault with a deadly weapon has been held to be a crime
> involving moral turpitude. * * * in the area of assault, crimes
> involving moral turpitude ordinarily include an aggravating factor.

Id. (citations omitted). Aggravating factors can include use of a weapon, actually causing serious bodily injury (as opposed to mere "bodily injury" without further qualification) or death, or the willfulness of the act. Id. The statute this respondent violated does not have as an element an intent to injure, nor recklessness in bringing about an injury, nor serious bodily injury (for the enhanced sentenced). In Fualaau, where the statute specifically required a reckless state of mind as an element of the offense, the Board held, "In order for an assault of the nature at issue in this case to be deemed a crime involving moral turpitude, the element of a reckless state of mind must be coupled with an offense involving the infliction of serious bodily injury." 21 I&N Dec. at 478 (emphasis added). Lacking that element, the Board found the crime of assault where recklessness is an element to be "similar to a simple assault." Id.

Here, the only actual injury alleged was minor scratches. No weapon was alleged to have been used. The only conceivable aggravating factor is that the victim was a foreign official. See, e.g. Matter of Danesh, 19 I&N Dec. 669 (BIA 1988) ("knowingly and intentionally causing bodily injury to a peace office" involves turpitude). But the fact of the victim's status cannot constitute an aggravating element of the crime in this case for two reasons that distinguish it from Danesh: (1) the intent to injure is not an element of the crime, Gan, supra, whether injury actually results or not; and (2) knowledge that the victim is a foreign official is not an element of the crime either, as can be seen from the lack of an scienter requirement in the statute, and from the case law interpreting its predecessor. US v. Ortega, 27 F.Cas. 359, 362 (Cir. Ct., E.D. Pa., 1825) ("[I]n point of law, it is immaterial whether the defendant knew that the person assaulted was charge d'affaires or not"). This strict liability simple assault crime rises to the level of a Federal offense not because of the supposed evil or turpitude of the defendant's act, but because of Congress's concern for the impact on foreign relations, even where such an impact is not at all intended or even known by the defendant.[3] Indeed, the facts in this case show that respondent

---

[3] Congress's revisions of this section in the "Act for the Protection of Foreign Officials and Other Official Guests in the United States," enacted October 24, 1972, Pub.L. 92-539, 86 Stat. 1070, observed in §2:

> The Congress recognizes that from the beginning of our history as
> a nation, the police power to investigate, prosecute, and punish
> common crimes such as murder, kidnaping, and assault has resided
> in the several States, and that such power should remain with the
> States.
>     The Congress finds, however, that harassment,
> intimidation, obstruction, coercion, and acts of violence committed
> against foreign officials or their family members in the United
> States or against official guests of the United States adversely

5

was entirely unaware that the 60-year-old Chinese lady that he bumped into on the sidewalk while drunk, and then stumbled over while trying to offer her a hand to get up, was the wife of a foreign embassy official. Nonetheless, by prosecuting him under 18 USC §112(a) the United States shows to the Chinese officials and government that China's officials emphatically enjoy the complete protection of US laws even in the case of a simple assault. Rather than an aggravating circumstance, then, the fact that the victim is a foreign official is an element indicating the national government's interest in a strong prosecution -- an element giving the federal courts jurisdiction, not an element indicating aggravating circumstances or turpitude.

The indictment also says respondent "offered violence" to the victim. This term, tracking the language in the statute, is a term of art in assault and battery law. An overt act such as an offer of violence or an attempt to use violence is one of the essential elements of assault. In the detailed anatomy of assault, an offer of violence appears to be a lesser act than an "attempt" to do the violence, but either is a sufficient overt act to complete the crime. As an example, menacing or threatening words are insufficient to constitute an assault without a further overt act, but that further overt act need not be as great as an actual battery: "the crime [of assault] is committed if the words are accompanied or followed by either an offer to do violence or an attempt to do it." 6 Am.Jur.2d Assault and Battery §25 (1999). An illustrative case cited in the Am.Jur.2d article, Dodd v. State, 189 Ark. 944, 75 S.W.2d 799 (1934) concerns a man who had just used a stick to kill a snake at a lady's home in her presence. He then demanded $5.00 of her, holding the stick in his hand while doing so. Having the stick in his hand was not by itself an "offer of violence," and therefore no assault occurred. For there to be an assault, "the defendant must have committed some act in execution of his purpose. . . [H]e must either <u>offer to do violence, as by drawing back his fist or raising a stick</u>, or attempt to do it, as by aiming a blow at another which does not take effect because it is warded off by a third person ..." 75 S.W.2d at 800 (emphasis added).

Another distinction between "assault" and "offer of violence" is given in the specific context of respondent's offense in one of the earliest reported cases under the predecessor statute, US v. Hand, 26 F.Cas. 103 (Cir. Ct., D. Pa. 1810). A shot from a pistol at the home of the Russian minister in Philadelphia was an "offer of violence" against the minister, even though it did not rise to the level of an assault on the minister at common law. The reason is found in the peculiarities of the law of diplomacy: "His [a foreign minister's] house, carriage, equipage, family, &c., are so connected with his person, as to partake of the same fate with it. To insult them, is an attack on the minister himself, and upon his sovereign. It is an insult to both." 26 F.Cas. at 104-105, quoting Vattel, Law of Nations, 618, 715, 719, et seq. The inclusion of the

---

       affect the foreign relations of the United States.
          Accordingly, this legislation is intended to afford the
United States jurisdiction concurrent with that of the several States
to proceed against those who by such acts interfere with its conduct
of foreign affairs.

6

term "offer of violence" in addition to "assault" in the statute therefore serves the purpose of including offenses that are similar to assault but do not rise to the level of assault. It is therefore clear that in the context of 18 USC §112(a) the term "offer violence" means something less than, not more than, simple assault. He could therefore be convicted of "offering violence" against the foreign official even if he could not be convicted of simple assault against him. Thus, the analysis of simple assault given above applies with equal force to the charge of "offering violence" to the person of another under that statute: if the simple assault proscribed is not a crime involving moral turpitude, then ipso facto the lesser crime of "offering violence" is not either.

The conclusion, then, that the crime of which respondent has been convicted is not a crime involving moral turpitude, is a sound one.

RESPONDENT'S CREDIBILITY

Respondent's credibility or lack thereof in the underlying merits case is relevant to this bond decision, since the court's judgment as to whether his release would pose a risk of harm to the person or property of others depends in part on an evaluation his testimony regarding the circumstances of the crime of which he was convicted and his character.

In his merits hearing (which may be used as a basis for a bond redetermination where the facts are set forth, Matter of Adeniji, supra) respondent's testimony of what happened the night he was arrested (his only crime in the US) bears all the indicia of truth and sincerity, and the court finds it thoroughly credible. He testified in minute detail as to what happened, gave full and direct responses to questions without the least hint of evasion, and took responsibility in a mature way for the acts he did commit and his character defects which led to his problems today, obviously having engaged in sober introspection about his own errors during the two years he was incarcerated as punishment, plus the year mandatory deprivation of liberty that has resulted as a further consequence pending these removal proceedings. He regarded himself as a social drinker before, but now accepts that he has a problem with alcohol, and has been treating it seriously while incarcerated. He recognizes that his drinking contributed to his present problems, not only in his bumping into the lady in the first place, but also in his inability to explain himself well at the time of the incident, as well as the difficulty others had in believing him when he was drunk.

His demeanor in court was polite, cooperative, humble, mature, reflective, considerate and objective. He portrayed a willingness to simply set forth the facts as best he sees them and allow the court to make its own judgments about them.

7